UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:13-CV-00023-FDW

| | |
|---|---|
| SHIRLEY A. CLORE,<br><br>   Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>   Defendant. | ORDER |

**THIS MATTER** comes now before the Court upon Plaintiff Shirley A. Clore's ("Plaintiff's") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, (Doc. No. 6) filed on September 4, 2013, and Defendant Acting Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment, (Doc. No. 8), filed on October 24, 2013. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Administrative Law Judge's ("ALJ's") decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on August 24, 2010 alleging a disability onset date of September 15, 2005. (Tr. 9) Plaintiff later amended the onset date to February 9, 2010. The claim was initially denied and

1

denied again upon reconsideration. Subsequently, on March 8, 2011, Plaintiff timely filed a written request for an administrative hearing and Administrative Law Judge Gregory M. Wilson held a video hearing on October 25, 2011.

On February 17, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on April 2, 2013. (Tr. 1). As such, the ALJ's decision of February 17, 2012 became the final decision of the Commissioner.

Plaintiff timely filed this action on May 30, 2013, and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "'must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). This Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the Commissioner's final decision. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court may not re-weigh conflicting evidence, make credibility determinations, or substitute its own judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, and not the court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456.

### III. DISCUSSION[1]

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes, between February 9, 2010, and the date of last insured, December 31, 2010.[2] On February 17, 2012, the ALJ found that Plaintiff was not "disabled" at any time between February 9, 2010, and the date of last insured. (Doc. No. 5-3). The Social Security

---

[1] Rather than separately set forth the facts in this chase, the Court has incorporated the relevant facts into its legal analysis.

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Administration has established a five-step sequential evaluation process for determining if a person is disabled. C.F.R. § 404.1520(a). The five steps are:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

(20 C.F.R. §§ 404.1520(a)(4)(i-v)). In this case, the ALJ determined that Plaintiff was not disabled under the fifth step in the above evaluation process. (Tr. 19). Particularly, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 18).

On appeal, Plaintiff makes the following assignments of error: (1) that the ALJ erred at step two of the sequential analysis by finding Plaintiff's heel spurs, diabetes, and hypertension are non-severe impairments and her paroxysmal atrial tachycardia (PAT) is not a medically determinable impairment; (2) that the ALJ erred in his RFC determination and assessment of the Plaintiff's credibility; and (3) that the ALJ failed to properly weigh certain medical opinion evidence. (Doc. Nos. 6-1, 6-2).

## A. The ALJ did not err at Step Two by Finding that Plaintiff's Heel Spurs, Hypertension, Diabetes, and PAT were not Severe Impairments

The severity evaluation is a de minimis "threshold screening standard to eliminate frivolous claims at an early stage in the process." Bowen v. Yuckert, 482 U.S. 137, 180 (1987). A non-severe impairment is one that "does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. An impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work. SSR 85-28, see also Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). Additionally, if an ailment is controlled by medication or treatment such that it does not cause work-related limitations, the ailment is not to be considered severe. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Conversely, an impairment is severe if the medical evidence establishes that it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c), 416.920(c).

At step two of the sequential analysis, the ALJ found that Plaintiff had the severe impairments of obesity and degenerative disc disease of the lumbar spine. (Tr. 11). Plaintiff contends that the ALJ erred by declining to find her heel spurs, hypertension, and diabetes were severe impairments. (Doc. Nos. 6-1, 6-2). Also, Plaintiff contends that the ALJ erred by finding that her PAT was a non-medically determinable impairment. Id.

The Court will address each of these impairments in turn. Plaintiff first argues that substantial evidence did not support the ALJ's finding that Plaintiff's heel spurs were a non-severe impairment. In determining that Plaintiff's heel spurs were a non-severe impairment, the ALJ found that even though an x-ray from December of 2010 showed that Plaintiff had a heel spur on her left heel, "there is no other evidence of problems with heel spurs or other foot

problems, as the claimant has alleged." (Tr. 12). Plaintiff asserts that the records of Plaintiff's previous family doctor, Dr. Nirvan Ona from between 2001 and 2005, reporting that Plaintiff reported left foot pain, (Tr. 235), and had a left heel spur (Tr. 234), along with a diagnosis by Dr. Robert Przyosch in 2006 of heel spur syndrome and plantar fasciitis, demonstrate that Plaintiff's heel spurs were a severe impairment. Contrary to Plaintiff's assertion, this evidence is only evidence of the diagnosis of an impairment. As Defendant argues, "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition." Brewton v. Astrue No. 1:09-cv-188, 2010 WL 3259800, at *6 (W.D.N.C. July 26, 2010) (citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)). Further, as the ALJ found, apart from the radiological report in December of 2010 finding that Plaintiff had a heel spur in her left foot, a review of the medical records from 2009 through 2011 do not contain any complaints by Plaintiff of pain in her feet or any other evidence of limitations from heel spurs. Additionally, treatment records from Carolina Spine and Neurosurgery Center show that in August of 2010, Plaintiff ambulated without difficulty, (Tr. 152), and physical exams in August of 2011 reported that the Plaintiff had 5/5 strength, a full range of motion, and good pulses in her lower extremities (Tr. 277, 286). Accordingly, as the medical evidence does not demonstrate any limitations arising from Plaintiff's heel spurs, the ALJ's determination that the Plaintiff's heel spurs were not a severe impairment is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in finding that her diabetes and hypertension were non-severe impairments. Plaintiff first alleges the ALJ erred in these determination because the ALJ based his findings on the medical records from her doctor's visits and failed to consider her testimony about the symptoms she experienced from her diabetes and hypertension and the side effects from she experienced from the medication she took for her conditions between those

6

appointments. The ALJ found Plaintiff's treatment records indicated that, although Plaintiff's epidural steroid injections had raised her blood sugars, Plaintiff's diabetes and hypertension were well-controlled and did not limit her ability to perform work functions in any significant manner. However, aside from Plaintiff's own subjective testimony that she believes that her diabetes and hypertension medication may cause her fatigue and dizziness, (Tr. 35-6, 42), Plaintiff does not cite nor does this court find any instance in Plaintiff's medical records in which Plaintiff complained of these issues. Moreover, the record is devoid of any objective medical evidence establishing that Plaintiff's diabetes or hypertension limited her ability to work.

Plaintiff next contends that the ALJ erred in his determination that diabetes and hypertension were non-severe impairments because the ALJ failed to consider the severity determination by Dr. Janet Johnson-Hunter, a non-examining state agency medical consultant whose RFC determination he afforded great weight, which listed these impairments as severe. However, as Defendant persuasively argues and upon review of Dr. Johnson-Hunter's report, despite Dr. Johnson-Hunter listing diabetes and hypertension as severe impairments,[3] (Tr. 50), she does not find that Plaintiff is limited in her ability to perform work functions in any way by her diabetes or hypertension. Accordingly, as the Court finds no error in the ALJs determination that the Plaintiff's diabetes and hypertension were non-severe impairments.

Plaintiff next contends that the ALJ failed to consider whether the effects of her impairments in combination was severe. However, the record does no support this assertion as the ALJ did consider whether Plaintiff had a combination of impairments that was severe, and in fact found "that the claimant's combination of impairments reach the requisite level to be considered severe." (Tr. 11). Further, the ALJ properly considered all of these impairments in

---

[3] Dr. Johnson-Hunter only lists "severe" under the severity column in her report next to these diagnosis. She does not provide any explanation for marking these, or any other impairment, as severe. (Tr. 50).

7

his RFC analysis in step four and found that they had no bearing on Plaintiff's RFC. (Tr. 14). Accordingly, the Court rejects this argument.

Finally, Plaintiff argues that the ALJ erred in finding her PAT was a non-medically determinable impairment. An impairment is medically determinable if it "result[s] from anatomical, physiological, or psychological abnormalities which can be show by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R § 404.158. To the extent that the ALJ might have erred in determining Plaintiff's PAT was a non-medically determinable impairment, such error is harmless because a review of the record does not reveal any limitations from Plaintiff's PAT and, as the ALJ noted, there is no medical evidence that Plaintiff currently has an irregular heart rate. (Tr. 12). Additionally, Plaintiff has not articulated how she was harmed or prejudiced by the error. See Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Remand is only appropriate if the ALJ would realistically reach a different conclusion or decision upon remand. Dover v. Astrue, No. 1:11-cv-120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012) (finding that "even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result.").

**B. The ALJ did not err in the Residual Functional Capacity Determination or Assessment of Plaintiff's Credibility**

Plaintiff next argues that the ALJ erred in determining Plaintiff's RFC because the ALJ did not consider Plaintiff's non-severe and non-medically determinable impairments. Plaintiff cites a portion of a sentence in the ALJ's decision that states "they [the non-severe and non-medically determinable impairments] have no bearing on the residual functional capacity above and will not be discussed further at this time," (Doc. No. 6-2 (citing Tr. 14)), to support this

8

argument. Contrary to Plaintiff's assertion, this sentence, especially when read in context of the full paragraph, clearly demonstrates that the ALJ did consider these impairments. To the extent that Plaintiff contends otherwise, such argument lacks merit.

Plaintiff also argues that the ALJ failed to properly evaluate the credibility of her subjective complaints of pain and her other symptoms. It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the Court is whether the credibility determination of the ALJ is supported by substantial evidence. Id.

In assessing a claimant's statements of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonably be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. Feb. 18, 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical

history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity of the claimant's pain and symptoms; (3) factors that predicate or aggravate the claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes in order to alleviate the pain or symptoms; (5) any treatment other than medication that claimant received to alleviate the pain or symptoms; (6) any additional measure that claimant used to relieve the pain or symptoms; (7) any other factors concerning claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

The ALJ is not required to discuss each factor enumerated in 20 C.F.R § 404.1529(c). Rather the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.

Here, the ALJ applied this two part process in assessing Plaintiff's statements regarding her symptoms. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. (Tr. 14). The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id.

In making this determination, the ALJ reviewed the medical record, treatment history, and other evidence in the record. The ALJ provided detailed and specific reasons for why he found Plaintiff's testimony not fully credible. (Tr. 14-15). For example, the ALJ found that the Plaintiff's allegations of back pain and lower extremity pain were inconsistent with the medical records indicating that these conditions continuously improved with epidural steroid injections and "only had mild pain in her leg and back." (Tr. 15). Additionally, the ALJ noted a physical exam of Plaintiff's back in May of 2011, revealed only CVA tenderness, and an examination in August of 2011 "showed full range of motion in the extremities with good pulses and grip strength and no pedal edema." Id. Because it is clear from the record that the ALJ applied the correct legal standard in assessing Plaintiff's credibility, and the ALJ determination that the Plaintiff's testimony was not fully credibly is supported by substantial evidence, the Court finds that the ALJ did not err in the determining of Plaintiff's credibility.[4]

**C. The ALJ Properly Weighed the Medical Opinion Evidence**

Finally, Plaintiff contends that the ALJ failed to properly weigh the opinion evidence from Paige Brinke, a physician's assistant, and improperly relied upon the opinions from the two non-examining state agency physicians.

Only the opinions of "acceptable medical sources" are entitled to controlling weight. See Boyd v. Colvin, 2013 WL 4482923 (W.D.N.C. Aug. 21, 2013) (citing SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)). Physician's assistants do not qualify as "acceptable medical sources" under the regulations; instead, they qualify as "other sources," who can offer evidence of

---

[4] Plaintiff additionally argues that the ALJ ignored her foot pain, side effects from medications, and symptoms from her other conditions, such as headache pain, fatigue, dizziness, muscle pain, and an irregular heartbeat in his credibility assessment. (Doc. No. 6-2). This argument restates Plaintiff's earlier argument that the ALJ erred in not considering the symptoms from her non-severe and non-medically determinable impairments in the RFC determination. As the Court has previously found this argument to be without merit, the Court finds that this argument is likewise without merit.

impairments and their severity, but are not explicitly entitled to the enhanced evidentiary value enjoyed by treating sources. Id.; 20 C.F.R. § 404.1513(d).

Here, the ALJ properly determined that the opinion of Ms. Brinke was not an acceptable medical source entitled to controlling weight. (Tr. 16). The ALJ then considered her opinion as an "other source" and found it was entitled to little weight. Id. Specifically, the ALJ found that Plaintiff's longitudinal medical record and activities of daily living did not support Ms. Brinke's opinion. Id. The ALJ also found that the medical records show that Plaintiff improved with epidural steroid injections. Plaintiff contends that the ALJ's decision to assign little weight to Ms. Brinke's opinion is not supported by substantial evidence because the ALJ's conclusions about the Plaintiff's medical record and activities of daily living are not supported by substantial evidence. (Doc. No. 6-2). Contrary to Plaintiff's assertions, the ALJ's decision to afford little weight to Ms. Brinke's opinion is supported by substantial evidence. First, despite Plaintiff's assertion, the activities of daily living that the ALJ cites have been endorsed by Plaintiff, as they are the same activities of daily living that she testified to undertaking at her hearing. (Tr. 34-41). Next, the ALJ cites significant evidence in the medical record that is inconsistent with Ms. Brinke's opinion. (Tr. 16). Though Plaintiff asserts that the ALJ incorrectly interpreted the medical evidence, it is not for this Court to reweigh the evidence. Hays, 907 F.2d at 1456.

Plaintiff also asserts that the ALJ erred because he failed to discuss any of the regulatory factors in SSR 06-03p for why he assigned little weight to Ms. Brinke's opinion. (Doc. No. 6-2). First, the ALJ was not required to explicitly discuss each factor in his decision. Henley v. Astrue, No. 3:11-cv-488, 2012 WL 2804846, at *3-4 (W.D.N.C. July 10, 2012); Warren v. Astrue, No. 5:08-cv-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009). The ALJ did however consider the factor of how consistent the opinion was with the other evidence, and

found it to be inconsistent. Based on these inconsistencies, he decided to give little weight to the Ms. Brinke's opinion. Accordingly the Court finds that the ALJ did not err by failing to explicitly discuss each factor in SSR 06-03p.

Plaintiff also asserts that the ALJ erred in assigning great weight to the opinions of the two non-examining state agency medical consultants, Dr. Janet Johnson-Hunter, (Tr. 48-55), and Dr. Elizabeth Hoyt, (Tr. 57-65), because they did not review the entire record. (Doc. No. 6-2). Specifically, Plaintiff asserts that they did not review records pertaining to Plaintiff's heel spurs consisting of the records of Dr. Nirvan Ona from 2000-2005 and the records from the Smoky Mountain Foot Clinic from 2006, an x-ray and radiological report of Plaintiff's left foot from Murphy Medical Center from December of 2010, and Peachtree Internal Medicine records from 2011. Id. Without this evidence, Plaintiff argues that Dr. Johnson-Hunter and Dr. Hoyt could not properly consider her capacity for walking, standing, or other lower extremity functions and thus their RFC opinions were not supported by substantial evidence. Id. Plaintiff further argues the ALJ further erred by rendering a lay opinion in making his RFC determination because he improperly rejected the opinion of Ms. Brinke, who had access to the entire medical record, and instead improperly relied on the opinions of Dr. Johnson-Hunter and Dr. Hoyt, who did not review the records concerning Plaintiff's heel spurs. (Doc. No. 6-2).

Contrary to Plaintiff's arguments, "[t]he fact that the state agency physician[s] did not have access to the entire evidentiary record – because the record was incomplete at the time of the assessment – is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his opinion." Thacker v. Astrue, No. 3:11-cv-246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011). Moreover, as Defendant persuasively argued and upon a review of the record, the Court finds that the records concerning Plaintiff's heel spurs that

Dr. Johnson-Hunter and Dr. Hoyt did not evaluate document any limitations that would alter their opinions concerning Plaintiff's capacity for walking, standing, or other lower extremity functions. Thus, the ALJ did not err in assigning great weight to opinions of Dr. Johnson-Hunter and Dr. Hoyt in making his RFC determination.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, (Doc. No. 6) is DENIED, the Defendant's Motion for Summary Judgment, (Doc. No. 7) is GRANTED, and the ALJ's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: January 27, 2014

Frank D. Whitney
Chief United States District Judge